In re William E. **RICHARDS**, Debtor,

UNITED STATES of America, Appellee,

v.

William E. **RICHARDS**, Appellant.

No. 92–6092.

United States Court of Appeals, Tenth Circuit.

May 28, 1993.

James L. Bentley, Del City, OK, for appellant.

Sara S. Holderness (Gary D. Gray, Tax Div., Dept. of Justice, Washington, DC, and James A. Bruton, Acting Asst. Atty. Gen., of counsel; Timothy D. Leonard, U.S. Atty., with her on the brief), for appellee.

Before BRORBY and EBEL, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.

McWILLIAMS, Senior Circuit Judge.

This is a bankruptcy case involving successive petitions in bankruptcy. The narrow issue to be resolved is whether the 240–day assessment period provided for in 11 U.S.C. § 507(a)(7)(A)(ii) (Supp.1992) stopped running during the pendency of the first petition for bankruptcy. The Bankruptcy Court for the Western District of Oklahoma held that the 240–day period was "suspended" during the pendency of the first bankruptcy pro-

ceeding. The debtor appealed the order of the Bankruptcy Court to the United States District Court for the Western District of Oklahoma. On review, the District Court held that the 240–day period was "tolled" during the pendency of the first bankruptcy proceeding. *In re Richards,* 141 B.R. 751, 752 (W.D.Okla.1992). The debtor appeals to this court the order of the District Court. Our jurisdiction is based on 28 U.S.C. § 158(d) (Supp.1993). We affirm.

The underlying facts are not in dispute and the question posed in this appeal is purely a question of law. On April 11, 1990, the IRS effectuated an assessment against William E. Richards for unpaid and overdue income taxes for the years 1982–1986 in the amount of $26,654.65. Ninety-six days later, on July 16, 1990, Richards filed his first petition for bankruptcy under Chapter 13 of the Bankruptcy Code.[1] In that proceeding, the IRS filed a proof of claim for the debtor's unpaid taxes. As far as we can tell from the record before us, the debtor filed no objections to this proof of claim. The debtor's plan was confirmed by the Bankruptcy Court on September 26, 1990, which presumably called for the payment of Richards' unpaid taxes in full. However, on February 20, 1991, after having been in bankruptcy for 219 days,[2] Richards voluntarily dismissed his petition. Apparently this was prompted by the fact that Richards failed to make the payments called for by the plan, which was due, at least in part, to the fact that the IRS was asserting that under 11 U.S.C. § 507(a)(7)(A)(ii) its claim for unpaid taxes was entitled to priority status and was required to be fully satisfied.

On April 11, 1991, 51 days after he had his first bankruptcy petition dismissed by the Bankruptcy Court, Richards filed a second Chapter 13 petition. The IRS again filed a proof of claim for income taxes owed by Richards for the years 1982–1986. Pursuant to 11 U.S.C. § 507(a)(7)(A)(ii), the IRS listed its claim as an unsecured priority claim, that statute granting seventh priority to tax claims which were assessed against the debtor within 240 days immediately preceding the filing of the bankruptcy petition. Richards filed an objection to the IRS's proof of claim on the grounds that the claim was not entitled to priority under 11 U.S.C. § 507(a)(7)(A)(ii) since the assessment on April 11, 1990, occurred more than 240 days prior to the filing of the debtor's second petition for bankruptcy on April 11, 1991.

As indicated, the Bankruptcy Court overruled Richards' objection to the IRS's proof of claim in the second proceeding, holding that the 240–day period did not run during the days the first bankruptcy proceeding was pending, and that holding was, in effect, upheld by the District Court on appeal.

The question presented by the instant case is whether the 240–day assessment period provided for in 11 U.S.C. § 507(a)(7)(A)(ii) stopped running during the pendency of the first bankruptcy proceeding. If it did not, then the IRS's proof of claim filed in the second bankruptcy proceeding was well beyond the 240–day period, i.e., from April 11, 1990, the date of the IRS's assessment, to April 11, 1991, the date of the filing of the second petition for bankruptcy, is 365 days.

However, if the 240–day period stopped running during the pendency of the first bankruptcy proceeding, then the IRS's proof of claim in the second bankruptcy proceeding was filed within 240 days from the date of the assessment on April 11, 1990, i.e. the 96 days between the assessment and the filing of the first bankruptcy petition on July 16, 1990, and the 51 days between the date of the dismissal of the first bankruptcy petition on February 20, 1991, and the filing of the second bankruptcy proceeding on April 11, 1991, makes a total of 147 days.

11 U.S.C. § 507(a)(7)(A)(ii), a copy of which is Attachment A hereto, provides that

---

1. Chapter 13 sets forth a procedure whereby individual debtors with regular income repay their creditors through an installment plan. For a Chapter 13 plan to be confirmed, it must propose to pay in full any claim classified as a "priority claim" under 11 U.S.C. § 507, unless the creditor consents to different treatment. 11 U.S.C. § 1322(a)(2) (Supp.1993).

2. The Bankruptcy Court and the District Court note that 281 days passed while Richards was before the Bankruptcy Court. This, however, appears to be either a typographical error or a miscalculation.

an income tax which is assessed within 240 days before the filing of a petition for bankruptcy shall have seventh priority. In this court the IRS concedes, as it must, that there are no sections of the Bankruptcy Code which expressly provide that in the case of successive petitions in bankruptcy, the 240–day period will not run during the pendency of the first bankruptcy. However, the IRS contends that the Bankruptcy Court's order can be upheld on other grounds. The IRS asserts that 11 U.S.C. § 105(a) (Supp.1992), a copy of which is Attachment B, grants the Bankruptcy Court the power to "issue any order, process, or judgment that is necessary to carry out the provisions" of the Bankruptcy Code and take "any action or mak[e] any determination necessary to enforce or implement court orders or rules, or to prevent an abuse of process."

In *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990), the United States Supreme Court referred to the "traditional understanding" that bankruptcy courts are courts of equity and that under 11 U.S.C. § 105(a) they may "issue *any* order, process or judgment necessary or appropriate to carry out the provisions" of the Bankruptcy Code. (emphasis added) In *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir.1990), *modified on other grounds, Abel v. West*, 932 F.2d 898 (10th Cir.1991), we also recognized the "supplementary equitable powers" granted bankruptcy courts under 11 U.S.C. § 105(a), but went on to state that such powers, however, "may not be exercised in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code."

We agree with the IRS that 11 U.S.C. § 105(a) is broad enough to permit the Bankruptcy Court's order to suspend the 240–day assessment period in 11 U.S.C. § 507(a)(7)(A)(ii) for the time Richards was in his first bankruptcy.

Section 507(a)(7)(A)(i) grants the government seventh priority for unpaid income taxes if the tax liability dates less than three years from the date of filing of the petition in bankruptcy. Section 507(a)(7)(A)(ii) also grants the government seventh priority for unpaid income taxes assessed within 240 days of the commencement of the bankruptcy petition. Thus, § 507(a)(7)(A) limits the priority status to more recent, but unpaid taxes, and denies priority status to so-called "stale" tax claims. In so doing, Congress intended to give the government the benefit of certain time periods to pursue its collection efforts. By suspending the 240–day period during Richards' first bankruptcy, the Bankruptcy Court ensured that the government was not deprived of the full benefit of the 240 days within which it could pursue its post-assessment collection remedies. This use of the equitable authority in 11 U.S.C. § 105(a) is not inconsistent with any specific provision of the Bankruptcy Code, and, in our view, is consistent with the underlying philosophy of the Bankruptcy Code.

Further, the policy of ensuring that the government have adequate time to collect unpaid taxes unimpeded by an intervening bankruptcy is reflected in a series of tolling provisions. For example, 11 U.S.C. § 108 suspends the statute of limitations for actions outside of bankruptcy for the pendency of the current bankruptcy proceedings. And, 26 U.S.C. § 6503(h) of the Internal Revenue Code suspends the time within which the government can collect a debtor's taxes for the pendency of the bankruptcy proceedings and six months thereafter.

The Bankruptcy Court's order suspending the 240–day period while Richards was in his first bankruptcy fulfills and preserves Congress's intent to afford the government certain time periods to pursue collection efforts, and at the same time prevents the debtor from avoiding priority by prolonging the initial bankruptcy proceeding.[3] During Rich-

---

**3.** Under Richards' interpretation of the statute a debtor could, for example, file for bankruptcy the day after the assessment, prolong the proceeding for 240 days, then voluntarily dismiss the procedure and file the next day a second bankruptcy proceeding, in which event, according to Richards, though the government's claim for unpaid

taxes in the first bankruptcy had unsecured priority status, in the second proceeding the government's claim for unpaid taxes would be only an unsecured general creditor's claim with no priority status. We doubt that such was Congress's intent.

ards' first bankruptcy, the government was prevented by the automatic stay provided for in 11 U.S.C. § 362(a) (Supp.1992) from attempting to collect, and it would seem to follow that the 240–day period should not run while Richards was in his first bankruptcy and the government was under the automatic stay.

Although the reasoning of the courts which have addressed the precise present problem varies, the results have consistently been the same, i.e. neither the three-year period provided for in 11 U.S.C. § 507(a)(7)(A)(i) nor the 240–day period provided for in 11 U.S.C. § 507(a)(7)(A)(ii) runs during the pendency of the first of two successive bankruptcies. *See, e.g., In re Linder,* 139 B.R. 950, 952–53 (D.Colo.1992) (holding that 26 U.S.C. §§ 6503(b) and (h) apply to the Bankruptcy Code through 11 U.S.C. § 108(c), thereby tolling the 240–day assessment period in 11 U.S.C. § 507(a)(7)(A)(ii)); *In re West,* 137 B.R. 1012, 1016 (D.Ore.1992) (holding that although the 240–day assessment period had expired, *In re Brickley,* 70 B.R. 113 (Bankr. 9th Cir.1986) required that the IRS be given an additional six months in which to collect the tax debt); *In re Worthen,* 137 B.R. 1016, 1020 (D.Ore.1992) (same); *In re Deitz,* 116 B.R. 792 (D.Colo.1990) (holding that 11 U.S.C. § 108 and 26 U.S.C. § 6503, in combination, suspended the 240–day assessment period); *In re Molina,* 99 B.R. 792 (S.D. Ohio 1988) (holding that the three-year period in 11 U.S.C. § 507(a)(7)(A)(i) was suspended by the filing of the first bankruptcy petition); *In re Brickley,* 70 B.R. 113 (Bankr. 9th Cir.1986) (holding that 11 U.S.C. § 108(c) in conjunction with 26 U.S.C. § 6503 suspended the three-year tax collection period in 11 U.S.C. § 507(a)(7)(A)(i) while the debtor's assets were protected by the bankruptcy court).

Judgment affirmed.

## ATTACHMENT A

### § 507. Priorities

(a) The following expenses and claims have priority in the following order:

. . . .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

11 U.S.C. § 507(a)(7)(A) (Supp.1992).

## ATTACHMENT B

### § 105. Power of court

(a) The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (Supp.1992).