**In re John EYSENBACH, Debtor et al.**

**No. 94–CV–615A.**

United States District Court,
W.D. New York.

March 23, 1995.

---

Avery M. Ellis, U.S. Dept. of Justice, Tax Div., Washington, DC, Jane B. Wolfe, U.S. Atty., Buffalo, NY, for appellant.

Mark K. Broyles, Relin and Goldstein, Rochester, NY, for appellee.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

This is an appeal by the United States from an Order of United States Bankruptcy Judge Carl L. Bucki, dated July 26, 1994, (170 B.R. 57), sustaining the objection of Citibank, an unsecured creditor, to the priority status of the Internal Revenue Service's claim against the debtor. The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

On appeal, Citibank did not file a brief and declined to participate in oral argument. The debtor, John Eysenbach, also did not file a brief, but his counsel did appear at oral argument and joined in the position of the United States. After considering the record on appeal and the submissions of the United States, and hearing oral argument from counsel, the Court reverses the Order of the Bankruptcy Court.

### BACKGROUND

On December 28, 1990, the debtor John Eysenbach, filed the first of two Chapter 13 bankruptcy cases in the Western District of New York. This proceeding, numbered 90–13931, was assigned to Judge Michael J. Kaplan, and was dismissed by the Bankruptcy Court on May 19, 1993.[1] On July 9, 1993,

---

**1.** The reason for the Bankruptcy Court's dismissal of the debtor's first Chapter 13 filing is unclear from the record on appeal.

less than two months after the dismissal, John Eysenbach filed his second (and current) Chapter 13 bankruptcy petition in the Western District of New York.

On November 12, 1993, following the commencement of the debtor's second Chapter 13 petition, the Internal Revenue Service ("IRS") filed a proof of claim with the Bankruptcy Court, consisting, in part, of an unsecured priority claim for unpaid income tax liabilities for the years 1988 and 1989.

Underlying the IRS's proof of claim were tax assessments made against the debtor on June 19, 1989, and November 19, 1990, for his income tax liabilities from 1988 and 1989, respectively. It is undisputed that these assessments were made more than 240 days prior to the filing of the second bankruptcy petition. It is also undisputed that the debtor's income tax returns for these years (1988 and 1989) were last due on April 15, 1989, and April 15, 1990, more than three years prior to the filing date of the debtor's current bankruptcy petition.

On December 29, 1993, Citibank, a general unsecured creditor in the current bankruptcy proceeding, filed a motion with the Bankruptcy Court objecting to the priority status of the IRS's claim against the debtor. On July 26, 1994, the Bankruptcy Court entered an Order granting Citibank's motion. In its Order, the Bankruptcy Court deemed the Internal Revenue Service to possess a general unsecured claim for income taxes due by the debtor for the periods ending December 31, 1988, and December 31, 1989. The Bankruptcy Court reasoned that, because the debtor's income tax returns for the years in question were filed (or last due to be filed) more than three years prior to the filing of the current bankruptcy petition, and, that assessments for these liabilities were made more than 240 days before the petition's filing, the IRS's claim against the debtor did

not qualify for priority status under 11 U.S.C. § 507(a)(7). The Bankruptcy Court rejected the United States' argument that the time limitations for determining priority status were tolled by the pendency of the debtor's first bankruptcy petition. It is the Bankruptcy Court's July 26, 1994 Order that the United States appeals here.

## DISCUSSION

■ A district court hearing an appeal from a bankruptcy court reviews the bankruptcy court's findings of fact under the "clearly erroneous" standard and its conclusions of law under the *de novo* standard. *See In re Brody,* 3 F.3d 35, 38 (2d Cir.1993); *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988–89 (2d Cir.1990), *cert. denied,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); Fed. R.Bankr.P. 8013. Applying this standard of review, the Court finds that the Bankruptcy Court erred in its failure to recognize that the pendency of the debtor's first Chapter 13 bankruptcy petition tolled the applicable Bankruptcy Code statute for determining the priority status of the United States' claim against the debtor in the current bankruptcy proceeding.

■ A bankruptcy court may not confirm a Chapter 13 plan unless it provides for "the full payment ... of all claims entitled to priority under [11 U.S.C. § 507]." 11 U.S.C. § 1322(a)(2). Under § 507(a)(7)[2], the United States is accorded priority status for its tax claims against a debtor when the claim is for income taxes, "for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition" and/or is "assessed within 240 days ... before the date of the filing of the petition." 11 U.S.C. §§ 507(a)(7)(A)(i) and 507(a)(7)(A)(ii). Section 507(a)(7) creates a "delicate balance" between priority and discharge of tax claims.[3] *In re Official Comm.*

---

**2.** Section 507(a)(7) was redesignated as § 507(a)(8) as a result of the 1994 amendments to the Bankruptcy Code. The 1994 amendments, however, do not apply to cases, such as this case, commenced before October 22, 1994. Thus, references herein are to the previous designation.

**3.** For example, priority claims are not discharged in Chapter 13 until paid in full. 11 U.S.C. §§ 1322(a), 1328. Nonpriority claims, however, may be discharged upon pro rata payment with general, unsecured claims. *Id.*

*of Unsecured Creditors of White Farm Equip. Co.,* 943 F.2d 752, 757 (7th Cir.1991), *cert. denied,* 503 U.S. 919, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992). The statute's legislative history shows that, as part of the balance, "Congress intended to give the government the benefit of certain time periods to pursue its collection efforts." *In re Richards,* 994 F.2d 763, 765 (10th Cir.1993). "[T]he tax collector ... should not lose taxes which he has not had a reasonable time to collect or which the law has restrained him from collecting." S.Rep. No. 989, 95th Cong., 2d Sess. 14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800.[4]

■ The IRS may not, however, collect tax claims against a debtor in bankruptcy unless it obtains relief from the automatic stay provision of the Bankruptcy Code. *See* 11 U.S.C. § 362(a)(6). "Because such relief is rarely granted, the IRS usually is 'prohibited by reason of such case' from collecting taxes until the bankruptcy petition is dismissed." *In re West,* 5 F.3d 423, 425 n. 3 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994).

Thus, in the case of successive bankruptcy filings such as the instant action, Congress' intent behind § 507(a)(7)—to allow the IRS a priority three-year tax collection period— would be thwarted unless the three-year period is tolled during the pendency of the previous bankruptcy proceedings, because the automatic stay provisions of the Bankruptcy Code would prevent collection activity against the taxpayer/debtor during at least a portion of this three-year period. Courts considering the issue of whether the three-year/240 day priority time provisions contained in § 507(a)(7) are tolled during the pendency of a prior bankruptcy filing of the debtor have overwhelmingly held that the prior bankruptcy tolled the priority periods, thereby allowing the IRS a three-year period (as intended by Congress) to collect a debtor's income tax liability prior to its discharge in bankruptcy. *See, e.g., In re West,* 5 F.3d at 426; *In re Montoya,* 965 F.2d 554, 555–58 (7th Cir.1992); *In re Brickley,* 70 B.R. 113, 115 (9th Cir. BAP 1986); *In re Linder,* 139 B.R. 950, 952–53 (D.Colo.1992); *In re Molina,* 99 B.R. 792, 794–95 (S.D.Ohio 1988); *In re Harris,* 167 B.R. 680, 681–83 (M.D.Fla. 1994); *In re Sirman,* 171 B.R. 403, 404 (M.D.Fla.1994); *In re Teeslink,* 165 B.R. 708, 711 & n. 3 (S.D.Ga.1994); *In re Smith,* 165 B.R. 398, 400 (M.D.Pa.1993); *In re Stoll,* 132 B.R. 782, 784–85 (N.D.Ga.1990); *In re Ross,* 130 B.R. 312, 313–14 (D.Neb.1991); *In re Wise,* 127 B.R. 20, 21–23 (E.D.Ark.1991).[5]

■ In general, the analysis of the courts in these cases is based on 11 U.S.C. § 108(c) and 26 U.S.C. § 6501, 6502, 6503(b), (h).[6] Although, as stated earlier, the IRS is prevented from assessing and collecting taxes during the pendency of a bankruptcy case, 11 U.S.C. § 362(a)(6), § 108(c) extends a statute of limitations for creditors in actions against the debtor when the creditor is prevented from proceeding outside the bankruptcy court due to the automatic stay provisions of the Bankruptcy Code.[7] The Internal Revenue Code ("IRC") provides for such a statute

---

4. The House Report evinces a similar concern: An open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due.
   H.R.Rep. No. 595, 95th Cong., 1st Sess. 190 (1978), *reprinted in* 1978 U.S.C.A.A.N. 5963, 6150.

5. Recently, the Tenth Circuit applied a different analysis but reached the same conclusion. *See In re Richards,* 994 F.2d at 765–66 (affirming the bankruptcy court's use of 11 U.S.C. § 105(a) to suspend the 240–day priority period during the course of the debtor's prior bankruptcy); *accord Solito v. United States,* 172 B.R. 837, 839–40 (W.D.La.1994).

6. Section 6503(i) was redesignated as § 6503(h) as a result of the 1990 amendments to the Internal Revenue Code. References herein are to the current designation.

7. Section 108(c) provides, in pertinent part:
   [I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until ... the end of such period, including any suspension of such period occurring on or after the commencement of the case.

of limitations for assessment of taxes (three years), 26 U.S.C. § 6501(a), and for the collection of taxes after assessment (ten years). 26 U.S.C. § 6502(a).[8] The IRC also provides for suspension of these periods for assessment and collection during a bankruptcy case. 26 U.S.C. §§ 6503(b), (h).[9] Accordingly, courts have almost uniformly interpreted § 108(c) to activate IRC § 6503, thereby preventing the periods for nondischargeability from running during the course of a debtor's bankruptcy case and for six months thereafter. The Court finds these cases persuasive and adopts their reasoning.

■ The Bankruptcy Court attempted to distinguish these cases on the fact that they involved situations where the debtor, not a creditor, was challenging the priority status of the IRS's tax claims. The Court finds this distinction unpersuasive. After all, § 507(a)(7) was expressly intended by Congress to provide the unsecured tax claims of the United States against the debtor with priority status over certain other claims of other *creditors* such as Citibank. Thus, whether the party attacking the priority status of the IRS's tax claims under § 507(a)(7) is a creditor or the debtor is irrelevant.[10]

## CONCLUSION

For the reasons stated, the Court reverses the Order of the Bankruptcy Court, dated July 26, 1994, sustaining the objection of Citibank to the priority status of the IRS's claim against the debtor, and remands the case for any further necessary proceedings in accordance with this Decision and Order.

**IT IS SO ORDERED.**

8. The 1990 amendments increased the collection period from six years to ten years effective for taxes assessed after the enactment, and for taxes assessed on or before the enactment if the six year period then existing had not yet expired.

9. Section 6503 provides, in pertinent part:
(b) **Assets of taxpayer in control or custody of court.**—The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States ... and for 6 months thereafter.

　　*　　*　　*　　*　　*　　*

(h) **Cases under title 11 of the United States Code.**—The running of the period of limitations in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the secretary is prohibited by reason of such case from making the assessment or from collecting and—
(1) for assessment, 60 days thereafter, and
(2) for collection, 6 months thereafter.

10. Such a result is also supported by the equities. In contrast to Citibank, which became a creditor by voluntarily extending some form of unsecured credit to the debtor (and thereby assuming some additional risk), the United States was made an involuntary creditor by virtue of its taxing authority.