**In re Judith Ann EVOLI, a/k/a Judith Ann Steinbrecher, Debtor.**

**No. 99–12694–8G3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 26, 2001.

Sandra E. Epperson, Epperson & Associates, P.A., Tampa, FL, for Debtor.

Scott M. Grossman, U.S. Department of Justice, Washington, DC, for Creditor.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

## ORDER ON (1) DEBTOR'S OBJECTION TO PROOF OF CLAIM OF INTERNAL REVENUE SERVICE, (2) MOTION BY UNITED STATES FOR SUMMARY JUDGMENT, AND (3) DEBTOR'S MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider (1) the Objection to Proof of Claim of Internal Revenue Service filed by the Debtor, Judith Ann Evoli, (2) the Motion by United States for Summary Judgment on Debtor's Objection to Proof of Claim, and (3) the Debtor's Motion for Summary Judgment on Objection to Proof of Claim of the Internal Revenue Service.

The United States filed a proof of claim in the Debtor's Chapter 13 case, and asserted that a portion of the total amount claimed was entitled to priority status pursuant to § 507(a)(8) of the Bankruptcy Code. The Debtor objected to the priority status of the claim, and requested that the claim be treated as a general unsecured claim for purposes of distribution in her chapter 13 case.

Generally, § 507(a)(8) establishes a priority for income tax liabilities for which returns were due within three years of the filing of a bankruptcy petition. The issue in this case is whether that three-year period was tolled during the pendency of the Debtor's prior bankruptcy case, plus an additional six months provided by § 6503 of the Internal Revenue Code.

## Background

The Debtor initially filed a chapter 7 petition on December 15, 1998. She received her chapter 7 discharge on March 30, 1999.

On August 4, 1999, approximately four months after receiving her discharge in the chapter 7 case, the Debtor filed a petition under Chapter 13.

On October 29, 1999, the Department of Treasury—Internal Revenue Service filed a proof of claim in the Chapter 13 case. The proof of claim was filed in the total amount of $6,118.69, and is based on income taxes for the 1995 and 1996 tax years. The parties agree that the taxes claimed for the 1996 tax year are entitled to priority status.

Consequently, the issue in this case involves only the income tax and interest related to the 1995 tax year. The principal amount of the 1995 tax liability is $3,207.00, and the interest claimed as of the petition date is $1,327.58, for a total claim relating to the 1995 tax liability of $4,534,58.

The United States asserts that the 1995 tax liability is entitled to priority status pursuant to § 507(a)(8) of the Bankruptcy Code. The Debtor asserts that the claim should be allowed only as a general unsecured claim in her Chapter 13 case.

## Discussion

Section 507(a)(8) provides in part:

**11 U.S.C. § 507. Priorities**

(a) The following expenses and claims have priority in the following order:

. . . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including exten-

sions, after three years before the date of the filing of the petition.

The consequences of this priority status are important. In a case under chapter 13, a tax that has this priority status must be paid in full (§ 1322(a)(2)). In a case under chapter 7, a tax that has this priority status must be paid before general unsecured claims are paid (§ 726(a)(1)), and is not discharged (§ 523(a)(1)(A)).

"This priority reflects Congress' determination that when a debtor is in bankruptcy, the Internal Revenue Service, which cannot choose its debtors, should be paid before the general unsecured creditors that can. See H. Rep. No. 595, 95th Cong., 1st Sess. 190 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6150 .... Congress limited this priority, however, to tax liabilities for which a return was due within three years of the filing of the bankruptcy petition." *In re Messer*, 2000 WL 991337, at *1 (S.D.N.Y.).

## A. *Morgan.*

Section 507(a)(8)(A)(i) may be applied according to its terms where a debtor has filed only one bankruptcy petition. An issue arises, however, where a debtor has filed sequential bankruptcy cases, and asserts that a claim filed by the IRS is not entitled to priority status because the return was due more than three years before the last case was filed.

The Eleventh Circuit Court of Appeals addressed this issue in *In re Morgan*, 182 F.3d 775 (11th Cir.1999). In *Morgan*, the debtors had filed a second Chapter 13 case approximately three months after their first Chapter 13 case was dismissed. The debtors contended that the income tax claims reasserted by the IRS in the second case were only general unsecured claims because they were more than three years old. *In re Morgan*, 182 F.3d at 777. The issue was "whether the three-year priority period of 11 U.S.C. § 507(a)(8)(A)(i), which governs income tax claims, may be tolled during the pendency of a prior bankruptcy proceeding." *Id.* at 777.

■ The Eleventh Circuit recognized that some circuits "have concluded that § 108(c), considered in conjunction with 26 U.S.C. § 6503(b) of the Internal Revenue Code (which suspends the limitation period on tax collection against a debtor), tolls the three year period." *Id.* at 778. However, the Court noted that "the plain language of § 108(c) ... states that it only applies to 'nonbankruptcy law' and 'nonbankruptcy proceedings' and therefore could not apply to the bankruptcy provision, § 507(a)(8)(A)(i)." *Id.* at 779. The Eleventh Circuit concluded that § 108(c) of the Bankruptcy Code "is insufficient to toll the three-year priority period ...." *Id.*

■ The Eleventh Circuit also concluded, however, that the three-year priority period may be tolled, where appropriate, during the pendency of a debtor's prior bankruptcy case, pursuant to the court's equitable powers under § 105(a) of the Bankruptcy Code.[1] *Id.* at 779. In so finding, the Eleventh Circuit considered the equitable purpose of § 105(a), and also considered the reliance on that section by the Tenth Circuit Court of Appeals to suspend a priority period set forth in a different subsection of § 507. See *In re Richards*, 994 F.2d 763 (10th Cir.1993). In the exercise of its equitable powers under § 105(a), therefore, a bankruptcy court may toll the three-year priority period during the pendency of a debtor's prior bankruptcy case.

■ While the Eleventh Circuit did not set out factors to be considered by courts

---

1. Section 105(a) provides:
 (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

when exercising the equitable powers under § 105(a), it held that the equities will generally favor the government in cases such as *Morgan,* and that a finding of dilatory conduct or bad faith on the part of the debtor is not necessary to find the equities in favor of the government. *Morgan,* 182 F.3d at 779–80, 780 n. 8.

■ In this case, the Debtor's chapter 13 petition was filed on August 4, 1999. Consequently, the date "three years before the date of the filing of the petition," as set forth in § 507(a)(8)(A)(i), was August 4, 1996. The Debtor filed a petition under chapter 7 on December 15, 1998, however, and received her discharge on March 30, 1999. The parties agree that the chapter 7 case remained pending for 105 days before the Debtor's chapter 7 discharge was entered. (United States' Memorandum of Law, pp. 2, 12; Debtor's Motion for Summary Judgment, p. 1). If the Court finds that the equities favor the government, therefore, the three-year period provided by § 507(a)(8)(A)(i) would be tolled during the 105–day period during which the chapter 7 case was pending. The date 105 days before August 4, 1996, was April 21, 1996.

The taxes at issue relate to the 1995 tax year, however, and the return for such taxes was due on April 15, 1996. Therefore, based on this calculation, the 1995 tax liability would not be entitled to priority status under § 507(a)(8)(A)(i) because the return was last due more than three years before the date of the filing of the chapter 13 petition (by six days), even including the 105–day span during which the period was tolled because of the Debtor's prior

bankruptcy case. Even though its method of calculation differs from that set forth above, the United States acknowledges that it "falls six days short of having these taxes classified as priority claims" if the priority period is tolled only during the pendency of the prior bankruptcy case. (United States' Memorandum of Law, p. 12; Transcript, August 2, 2000, hearing, p. 6).

### B. 26 U.S.C. § 6503.

The United States contends, however, that an additional six months should be added to the 105–day suspension when tolling the priority period under § 507(a)(8). According to the United States, § 6503(b) of the Internal Revenue Code "suspends the period of limitations on collection of an assessed tax liability for the period the taxpayer's assets are in the control or custody of a court, *and for six months thereafter,* and section 6503(h) suspends the period of limitations on collection in cases under Title 11 when the Secretary of the Treasury is prohibited by reason of such case from collecting, *and for six months thereafter.*" (United States' Memorandum of Law, pp. 9–10)(Emphasis supplied).

Section 6503 of the Internal Revenue Code, which the United States seeks to apply, provides at paragraph (h):

26 U.S.C. § 6503. Suspension of running of period of limitation

. . . . .

(h) Cases under title 11 of the United States Code.—The running of *the period of limitations provided in section 6501*[2] *or 6502*[3] on the making of assessments

---

**2.** 26 U.S.C. § 6501. Limitations on assessment and collection

(a) General rule.—... the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period....

**3.** 26 U.S.C. § 6502. Collection after assessment

(a) Length of period.—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
(1) within 10 years after the assessment of the tax ....

or collection shall, in a case under title 11 of the United States Code, be suspended for *the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—*

(1) for assessment, 60 days thereafter, and

(2) *for collection, 6 months thereafter.*

26 U.S.C. § 6503(h)(Emphasis supplied).

The United States acknowledges that 26 U.S.C. § 6503 extends periods provided by the Internal Revenue Code for assessment and collection of taxes, and that it does not extend the period provided by § 507(a)(8) of the Bankruptcy Code for priority status of unsecured tax claims. The United States asserts, however, that the Court should exercise its equitable power under § 105(a), as permitted by *Morgan,* to toll the priority period under § 507(a)(8) not only during the pendency of the prior bankruptcy case, but also for an additional six months to correspond to the extension for assessment and collection provided by § 6503. To support its contention, the United States relies on four cases arising in another circuit in which the initial tolling was increased by six months pursuant to § 6503. See *In re Hollowell,* 222 B.R. 790 (Bankr.N.D.Miss.1998); *In re Blakely,* 219 B.R. 722 (Bankr.S.D.Miss.1998); *In re Miller,* 199 B.R. 631 (Bankr.S.D.Tex.1996); and *In re Clark,* 184 B.R. 728 (Bankr. N.D.Tex.1995).

The Eleventh Circuit's decision in *Morgan,* of course, permitted the use of § 105(a) to toll the priority period during the prior bankruptcy case, but did not address the additional six-month suspension related to § 6503. It appears, therefore, that the issue in this case is whether § 105(a) or the decision in *Morgan* permit the priority period of § 507(a)(8) to be tolled for six months in addition to the period of a prior bankruptcy case, on account of the suspension of the limitations period provided by § 6503. The Court concludes that they do not.

Section 105(a), by its terms, allows the court to issue any order that is necessary or appropriate "to carry out the provisions of this title [Title 11]." The provisions of § 507(a)(8) establish three years as the period for the United States to assess and collect a tax before the tax loses its priority status in a bankruptcy case. *Morgan* supports this provision by allowing the period to be tolled for portions of the period when the United States may not act, and thereby allowing the United States the full three year period within which it may act. However, extending the period beyond the full three years does not carry out the provisions of Title 11.

It is clear that the Eleventh Circuit intended to serve two policies in reaching its decision in *Morgan.* First, it intended to discourage debtors from abusing the bankruptcy system by prolonging their first case, and then defeating their income tax liability in a subsequent case because the taxes had grown "stale." Second, the Eleventh Circuit intended to preserve the government's ability to collect taxes for the time periods designated by statute.

> Due to congressional intent, which favors allowing the government sufficient time to collect taxes, and the fear that taxpayers may abuse the bankruptcy process in order to avoid paying taxes, we hold that the equities will generally favor the government in cases such as this.

*In re Morgan,* 182 F.3d at 779–80. In *Morgan,* the Eleventh Circuit relied expressly on the reasoning of the Tenth Circuit Court of Appeals in *In re Richards,* 994 F.2d 763 (10th Cir.1993). In that case, the Tenth Circuit advanced the same two policy considerations set forth in *Morgan.*

> The Bankruptcy Court's order suspending the 240–day period while Richards was in his first bankruptcy fulfills and preserves Congress's intent to afford the government certain time periods to pursue collection efforts, and at the same time prevents the debtor from

avoiding priority by prolonging the initial bankruptcy proceeding.

*In re Richards*, 994 F.2d at 765. See also *Mouradian v. United States*, 1998 WL 953981, at *3 (M.D.Fla.)(Failure to toll the priority period "would promote tax avoidance and abuse, and deprive the IRS of a fair opportunity to collect taxes due.")

Obviously, section 6503 is contained in the chapter of the Internal Revenue Code dealing with the statutes of limitations for assessing and collecting taxes. The effect of the subsection is to extend the period within which the IRS may assess or collect taxes in cases where the taxpayer has filed a bankruptcy petition. The extension is first granted for a length of time equal to the period during which the IRS was prohibited from making the assessment or collecting the tax by reason of the bankruptcy case. Second, an additional six-month extension is provided in § 6503(h)(2), and this additional extension is cumulative to the initial extension that was directly related to the period in which the IRS was prohibited from collecting the tax.

It appears that the six-month period provided in § 6503(h)(2) is an arbitrary length of time for the extension of the statute of limitations. At the hearing in this case, the government explained § 6503(b) and § 6503(h) as follows:

> Now, although research of the issue revealed very little legislative history on these sections, the only logical explanation for them is that being a large government bureaucracy, the IRS needs this additional six months when it finds out that a debtor has emerged from bankruptcy and it is once again open to collection activities. And that's really the only logical explanation for these provisions.

(Transcript, August 2, 2000, hearing, p. 6–7; see also United States' Memorandum of Law, pp. 9–10). The six-month extension set forth in § 6503(h)(2), therefore, is not designed to correspond to the period during which the IRS was prevented from engaging in collection activities as a result of the bankruptcy case. In other words, the six months does not represent a period of time within which the IRS was barred from collecting the taxes due.

In *Morgan*, the Eleventh Circuit concluded that the Court could use its equitable powers under § 105(a) to assure that a claim of the IRS maintains a priority status for the full three year period provided by § 507 of the Bankruptcy Code. Title 26 U.S.C. § 6503 does not extend this three year period. The equitable powers of the Court under § 105(a), are "to carry out the provisions of this title [Title 11]," and *Morgan* does not extend these equitable powers beyond the provisions of the Bankruptcy Code.

## C. Application.

Section 507(a)(8)(A)(i) of the Bankruptcy Code provides that an income tax is entitled to priority status if the return was due "after three years before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(A)(i). The section "limits the priority status to more recent, but unpaid taxes, and denies priority status to so-called 'stale' tax claims." *In re Richards*, 994 F.2d at 765. The basis for the decision in *Morgan* is to ensure that the three-year period set forth in § 507(a)(8) is not collapsed by reason of a prior bankruptcy filing that deprived the IRS of its ability to collect the tax during a portion of the statutory period. Unless the three-year period is tolled during the pendency of the prior bankruptcy case, any taxes due at the time of the subsequent case may effectively be rendered nonpriority "stale" taxes, even though the IRS did not have the ability to collect the tax for the full three years contemplated by § 507(a)(8).

If the priority period of § 507(a)(8) is tolled not only during the pendency of a prior bankruptcy case, however, but also for the six-month extension provided by § 6503(h), the IRS would receive a period of "collectibility" that may be longer than

the three years expressly provided by § 507(a)(8).

The Court concludes that the three-year priority period of § 507(a)(8) should be tolled only for those periods of time during which the IRS is actually prohibited from pursuing collection activities against the taxpayer. Such conclusion serves the policy advanced by the Eleventh Circuit in *Morgan* to allow the government sufficient time to collect taxes, without altering the purpose of § 507(a)(8) to allow a priority only for taxes falling within the designated three-year time period. *In re Messer*, 2000 WL 991337, at *1 (S.D.N.Y.)

Generally, the IRS is precluded from engaging in collection activities while a taxpayer is a debtor in a pending bankruptcy case. As discussed above, however, the six-month suspension provided by § 6503(h)(2) is not based on any period within which the IRS was barred from collecting the tax. Consequently, the priority period of § 507(a)(8) may be tolled during the pendency of a taxpayer's prior bankruptcy case, but should not be tolled by an additional six months on account of § 6503(h).

### D. Conclusion.

The three-year priority period of § 507(a)(8)(A)(i) may be tolled during the pendency of a debtor's prior bankruptcy case pursuant to the exercise of the Court's equitable powers under § 105(a) of the Bankruptcy Code. *In re Morgan*, 182 F.3d at 779. Generally, the equities will favor the government in cases of serial filings by the same debtor, and no finding of dilatory conduct or bad faith on the part of the debtor is required to determine that the equities weigh in favor of the government. *Id.* at 779–80, 780 n. 8. The parties agreed that no testimony or additional documentary evidence was necessary concerning the equities involved, and that the Court could decide the case based on the existing record. (Transcript, August 2, 2000, hearing, pp. 16–17). In this case, where the Debtor filed a chapter 7 case and discharged all dischargeable debts, and four months later filed a chapter 13 case to pay the remaining debts, the Court concludes that the equities favor the United States, and that the three year period of § 507(a)(8) should be tolled for the 105 days during which the Debtor's prior bankruptcy case was pending. However, the Court also concludes that § 105(a) and *Morgan* do not provide a basis for an additional six-month tolling period. The Debtor's chapter 13 petition was filed on August 4, 1999. The date three years plus 105 days before August 4, 1999, was April 21, 1996. The return for the Debtor's 1995 taxes was due on April 15, 1996. Accordingly, the return was last due more than three years before the date of the filing of the chapter 13 petition, and the portion of the claim relating to the Debtor's 1995 taxes is not a priority claim.

Therefore:

**IT IS ORDERED** that:

1. The Objection to Proof of Claim of Internal Revenue Service filed by the Debtor, Judith Ann Evoli, is sustained in part and overruled in part as set forth herein.

2. The portion of Claim Number 8 of the Internal Revenue Service related to the Debtor's 1996 tax liability is allowed as a priority claim.

3. The portion of Claim Number 8 of the Internal Revenue Service related to the Debtor's 1995 tax liability is disallowed as a priority claim, but allowed as a general unsecured claim.

4. The Motion by the United States for Summary Judgment on Debtor's Objection to Proof of Claim is denied.

5. The Motion for Summary Judgment on Objection to Proof of Claim of the Internal Revenue Service filed by the Debtor, Judith Ann Evoli, is granted.