UNITED STATES of America, Appellant,

v.

Albert L. GILMORE, Jr., Appellee.

No. 6:96CV538.

United States District Court,
E.D. Texas,
Tyler Division.

June 5, 1998.

Waymon G. DuBose, Department of Justice, Dallas, TX, for Internal Revenue Service.

Charles E. Lauffer, Jr., Hardy & Atherton, Tyler, TX, for Albert Gilmore, Jr.

## MEMORANDUM OPINION AND ORDER

STEGER, District Judge.

On this day came on to be considered the instant appeal from a bankruptcy court case.

After careful consideration, the Court is of the opinion that the following order should issue.

## JURISDICTION

This Court has jurisdiction over this appeal from the Bankruptcy Court for the Eastern District of Texas, Tyler Division, pursuant to 28 U.S.C. § 158(a), which provides appellate jurisdiction over bankruptcy matters to the district courts.

## STANDARD OF REVIEW

*I. Factual Findings of the Bankruptcy Court*

The standard of review for factual findings made by the bankruptcy court is found in Bankruptcy Rule 8013: "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." [1] As a corollary of that review standard, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." [2] Case law supports the rule's statement that broad deference is to be given the findings of the bankruptcy court under the clearly erroneous standard. [3] In discussing the meaning of the clearly erroneous standard, the United States Court of Appeals for the Fifth Circuit has stated that there are guidelines to be followed by the district court:

> [t]he foremost of these principles...is that "[a] finding is clearly erroneous when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed"...This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. [4]

---

1. Bankr.R. 8013 (in pertinent part). This standard of review applies to appeals of core proceedings, i.e., those "under [28 U.S.C.] section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987). The Court finds that this is a core proceeding since, by its nature, it could arise only in the context of a bankruptcy case.

2. *Id.*

3. *See, e.g., Matter of Luce,* 960 F.2d 1277, 1280 (5th Cir.1992) (citation omitted); *Matter of Webb,* 954 F.2d 1102, 1103–1104 (5th Cir.1992); *Matter of T.B. Westex Foods, Inc.,* 950 F.2d 1187, 1190 (5th Cir.1992) (citations omitted).

4. *Webb,* 954 F.2d at 1104 *(quoting, Anderson v. City of Bessemer,* 470 U.S. 564, 573–574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

Additionally, the court stated that plausibility of the findings in view of the entire records is a key factor, and that a reversal of the bankruptcy court's decision is not merited merely because the reviewing court would have decided the case differently had it been presiding as the fact finder: "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."[5]

*II. Conclusions of Law*

In contrast to the clearly erroneous standard of review for findings of fact, conclusions of law reached by the bankruptcy court are to be given *de novo* review by this Court.[6]

**REVIEW OF THE BANKRUPTCY COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW IN THIS CASE**

*I. Findings of Fact*

After careful review of the parties' briefs and the bankruptcy court's findings of fact under the standard of review set out above, the Court is of the opinion that none of the bankruptcy court's factual findings are clearly erroneous. Therefore, the Court is of the opinion that the bankruptcy court's findings of fact should be affirmed.

The findings of fact which have been stipulated to by the parties and adopted by the bankruptcy court are as follows.

1. The Debtors' federal income tax return for tax year 1985 was due under extension on October 15, 1986, and the Debtors filed their joint return on October 15, 1986.

2. On November 24, 1986, the IRS made assessments against the Debtors for their joint liability for unpaid federal income taxes for tax year 1985. The IRS assessed the Debtors $16,208.00 in tax, $901.00 in penalties, and $949.22 in interest.

3. The Debtors' federal income tax return for tax year 1986 was due under extension on July 7, 1987, but the Debtors did not file their joint return until August 8, 1988.

4. On September 5, 1988, the IRS made assessments against the Debtors for their joint liability for unpaid federal income taxes for tax year 1986. The IRS assessed the Debtors $6,994.00 in tax, $2,204.73 in penalties, and $1,110.99 in interest.

5. The Debtors' federal income tax return for tax year 1987 was due April 15, 1988, but the Debtors did not file their joint return until August 8, 1988.

6. On September 5, 1988, the IRS made assessments against the Debtors for their joint liability for unpaid federal income taxes for tax year 1987. The IRS assessed the Debtors $13,268.00 in tax, $3,178.34 in penalties, and $622.97 in interest.

7. On April 14, 1989, the Debtors filed a petition for relief under Chapter 13 of Title 11, Case No. 89–60799, in the Eastern District of Texas, Tyler Division.

8. The Debtors' federal income tax return for tax year 1988 was due under extension on August 15, 1989, and the Debtors filed their joint return on July 7, 1989.

9. On July 3, 1989, the IRS timely filed an original proof of claim dated June 29, 1989, in the aggregate amount of $106,167.78, consisting of a secured claim in the amount of $30,890.98, an unsecured priority claim in the amount of $65,329.67, and an unsecured general claim in the amount of $9,947.13, in the Debtors' Chapter 13 bankruptcy.

10. On September 5, 1989, an order was entered confirming the Debtor's First Amended Plan of Reorganization in their Chapter 13 bankruptcy.

**5.** *Id.*

**6.** *Luce,* 960 F.2d at 1280 (*citing Jordan v. Southeast Nat'l Bank (In Re Jordan),* 927 F.2d 221, 223–224 (5th Cir.1991)); *T.B. Westex Foods, Inc.,* 950 F.2d at 1190 (*citing New Orleans Pub. Serv., Inc. v. First Federal Sav. & Loan Ass'n of Warner Robins, Ga.,* 924 F.2d 74, 76 (5th Cir.1991)) (*quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948) (conclusions due "plenary review")).

11. On September 27, 1989, an order was entered confirming the Debtors' First Amended Plan of Reorganization.

12. The IRS was the largest creditor in the Debtors' Chapter 13 bankruptcy.

13. Total amount of $32,949.27 was paid on to the IRS during the Debtors' Chapter 13 bankruptcy.

14. The $32,949.27 paid to the IRS during the Debtors' Chapter 13 bankruptcy was applied to the following tax years in the following amounts:

| Tax Year | Amount Applied |
| --- | --- |
| 1982 | $15,457.87 |
| 1983 | $11,059.54 |
| 1984 | $ 6,431.86 |

15. On August 16, 1991, the IRS filed a first amended proof of claim dated August 10, 1991, in the aggregate amount of $104,610.78, consisting of a secured claim in the amount of $30,-890.98, an unsecured priority claim in the amount of $63,772.67 (to reflect the filing of the Debtors' 1988 joint income tax return), and an unsecured general claim in the amount of $9,947.13 in the Debtors' Chapter 13 bankruptcy.

16. On April 1, 1992, the Debtors filed a Motion to Dismiss their Chapter 13 bankruptcy.

17. On April 20, 1992, an order was entered granting the Debtors' Motion to Dismiss their Chapter 13 bankruptcy.

18. On July 6, 1992, the IRS made assessment against the Debtors for their joint liability for unpaid federal income taxes for tax year 1988. The IRS assessed the Debtors $12,443.00 in tax, $3,222.38 in penalties, and $5,020.49 in interest.

19. On October 1, 1992, an order was entered closing the Debtors' Chapter 13 bankruptcy.

20. The automatic stay was in effect in the Debtors' Chapter 13 bankruptcy for 1,276 days.

21. On December 8, 1992, the Debtors filed a petition for relief under Chapter 7 of Title 11, Case no. 92-60884, in the Eastern District of Texas, Tyler Division.

22. The Debtors' Chapter 7 bankruptcy was a no asset case.

23. The IRS did not file a proof of claim in the Debtors' Chapter 7 bankruptcy.

24. The IRS was the largest creditor in the Debtors' Chapter 7 bankruptcy.

25. On March 26, 1993, an order was entered discharging the Debtors from their dischargeable debts.

26. The automatic stay was in effect in the Debtors' Chapter 7 bankruptcy for 107 days.

27. From April 20, 1992 (date the order was entered granting the Debtors' Motion to Dismiss their Chapter 13 bankruptcy) to December 8, 1992 (date the Debtors filed the Chapter 7 bankruptcy) is 232 days.

28. From October 15, 1986 (due date of the Debtors' 1985 income tax return) to April 14, 1989 (date the Debtors filed the Chapter 13 bankruptcy) is 910 days.

29. From April 15, 1987 (due date of the Debtors' 1986 income tax return) to April 14, 1989 (date the Debtors filed the Chapter 13 bankruptcy) is 730 days.

30. From April 15, 1988 (due date of the Debtors' 1987 income tax return) to April 14, 1989 (date the Debtors filed the Chapter 13 bankruptcy) is 363 days.

31. The Debtors filed their Chapter 13 bankruptcy on April 14, 1989, which is before their 1988 income tax return was due under extension on August 15, 1989.

32. Debtor Albert L. Gilmore, Jr.'s federal income tax return for tax year 1993 was due under extension October 15, 1994, but his single return was no received by the IRS until October 17, 1994.

33. As of September 25, 1995, the outstanding balance due on Debtor Albert L. Gilmore Jr.'s 1993 federal income tax liability is $2,083.38.

34. Debtor Albert L. Gilmore, Jr.'s federal income tax return for tax year 1994

was due under extension on October 15, 1995.

The following findings of fact are those which were specifically made by the bankruptcy court:

35. The IRS was listed in the Debtors' schedules and received notice of their Chapter 7 bankruptcy.

36. On March 26, 1993, an order was entered closing the Debtors' Chapter 7 bankruptcy.

37. Notices of intent to levy dated December 19, 1994, were sent to the Debtors by the IRS for the unpaid taxes.

38. A letter dated December 27, 1994, was mailed to the IRS by the Debtors' attorney, Charles Lauffer ("Lauffer") stating that the taxes were discharged and that the notices of intent to levy violated the discharge injunction imposed under § 524(a).

39. A final notice of intent to levy dated January 9, 1995, was mailed to the Debtors by the IRS.

40. A letter dated February 14, 1995, was mailed to the IRS by Lauffer that once again stated that the taxes were discharged and informing the IRS that the Debtors intended to sue the IRS if the IRS did not discontinue efforts to collect the taxes. Lauffer mailed two additional letters to the IRS dated April 12, 1995 and April 26, 1995, which also demanded that the IRS cease efforts to collect the taxes.

41. Notices of levy dated May 16, 1995, were served on the Debtors' employers, Community Credit Union and Tyler Junior College, by the IRS.

42. A letter dated May 30, 1995, was mailed by Lauffer to the IRS informing the IRS that the Debtors have "no choice" but to file suit against the IRS for violating the discharge injunction.

43. On June 14, 1995, the Debtors filed the Motion seeking the enforcement of the discharge injunction and the recovery of damages.

44. On August 4, 1995, the IRS filed its response to the Motion which merely asserts that the Motion should be denied.

45. The IRS has never filed a pleading that affirmatively requests that the Court use its equitable powers under § 105(a) to toll the three year limitation under § 507(a)(8)(A)(I) during the pendency of the Debtors' Chapter 7 bankruptcy.

## II. Conclusions of the Court

After careful review of the parties' briefs and the bankruptcy court's conclusions of law under the standard of review set forth above, the Court is of the opinion that the bankruptcy court was correct in its conclusions of law.

The bankruptcy court concurred with the majority of courts which have held that a court may exercise its equitable powers pursuant to 11 U.S.C. § 105(a) to toll the three year time limitation pursuant to 11 U.S.C. § 507(a)(8)(A)(I) (" § 507 time limitation"). *See generally In re Richards*, 994 F.2d 763, 765 (10th Cir.1993); *Collins v. United States*, No. H–92–2221 (S.D.Tex. Oct. 6, 1994); *In re Clark*, 184 B.R. 728 (Bankr.N.D.Tex.1995); *In re Leraas*, No. 94–40724 (Bankr.E.D. Tex. June 7, 1995); *In re Ramos*, No. 94–50359–K–13 (Bankr.W.D.Tex. Dec. 29, 1994); *In re Walton*, No. 493–41516–MT–13, 1994 WL 904444 (Bankr.N.D.Tex. March 18, 1994). The Court concluded that if the facts warranted tolling of the § 507 time limitations, the taxes would not be discharged. The facts in the instant case demonstrated that the taxes owing were due more than three years and assessed more than 240 days prior to the debtors' filing of the Chapter 7 bankruptcy. Consequently, the taxes in the instant case would clearly have been discharged but for a decision by the bankruptcy court that the § 507 time limitation should be tolled during the time of the debtors' prior bankruptcy, when the automatic stay pursuant to 11 U.S.C. § 362 was in place. The bankruptcy court concluded that the facts of the instant case did not warrant tolling of the time limitation. The Court arrived at this conclusion, having found that at no time did the IRS file a pleading which made an affir-

mative request for the bankruptcy court to exercise its equitable powers and toll the § 507 time limitation. The bankruptcy court concluded that the IRS shouldered the burden of showing that equitable tolling pursuant to § 105(a) was proper. The bankruptcy court also concluded that the IRS engaged in "arrogant conduct" in proceeding to collect the taxes in question without properly seeking and obtaining a ruling that the three year § 507 time limitation should be equitably tolled. The bankruptcy court concluded that if the IRS believed that tolling was warranted, it should have filed a dischargeability proceeding under 11 U.S.C. § 523(a)(1), seeking that the taxes be found nondischargeable under the theory of equitably tolling. *See* Fed. R. Bankr.P. 7001(6) & (7). In essence, the bankruptcy court concluded that it would not be proper for it to exercise its equitable powers in favor of the IRS since the agency had itself acted in a manner contrary to the principles of equity by simply presuming that tolling would apply and the taxes were nondischargeable. *See In re Grimes*, 147 B.R. 307, 316 (Bankr.E.D.N.Y.1992).

As noted previously, this Court will implement *de novo* review of the conclusions of law rendered by the bankruptcy court. *See In re Luce*, 960 F.2d at 1280. In this regard, the Court renders the following conclusions of law, which pertain specifically to the issues raised on appeal.[7]

### A. Exercise of Equitable Tolling Powers

 In this point of error, the United States ("government") argues that the bankruptcy court erred in failing to exercise its equitable powers to toll the three year limitation found in 11 U.S.C. § 507(a)(8)(A)(I) during the time of the debtor's prior bankruptcy. Section 507(a)(8)(A)(I) grants the government eighth priority for unpaid income taxes if the tax liability dates less than three years from the date of filing of the petition in bankruptcy. *See In re Richards*, 994 F.2d 763, 765 (10th Cir.1993). Section 507(a)(8)(A)(ii) also grants the government eighth priority for unpaid income taxes as-

sessed within 240 days of the commencement of the bankruptcy petition. *Id.* Thus, section 507(a)(8)(A) limits the priority status to more recent, but unpaid taxes, and denies priority status to so-called "stale" tax claims. *Id.* Section 523(a)(1)(A) of Title 11, accordingly, excepts from discharge those taxes specified in § 507(a)(8)(A) for the periods set out in that provision. Under conventional circumstances, then, taxes which were due less than three years prior to or assessed within 240 days of the filing of the debtor's bankruptcy petition would be excepted from discharge and would be therefore collectable by the IRS. As mentioned previously, if, during the three year or 240 day periods before the filing, the debtor was engaged in a prior bankruptcy, the IRS would be prevented from collecting these taxes due to the automatic stay put in place during the prior bankruptcy pursuant to 11 U.S.C. § 362. This very situation confronted the IRS in the instant case, providing the impetus for the instant appeal. On December 8, 1992, the debtors filed a Chapter 7 bankruptcy in the Eastern District of Texas, Tyler Division. Prior to this, the debtor had filed a Chapter 13 bankruptcy in the Eastern District of Texas on April 14, 1989. This prior Chapter 13 bankruptcy was not closed by the bankruptcy court until October 1, 1992. The government argues that the bankruptcy court should have used its equitable powers to toll the § 507 time limitation so that the time when the debtor was engaged in his prior bankruptcy would not be counted against the government and the taxes in question would be nondischargeable. The government argues, ultimately, that the bankruptcy court should have used its equitable powers to extend the time for the its tax collection efforts during the period the debtors were in their prior Chapter 13 bankruptcy (1276 days), plus a six month period thereafter, so that their income taxes for tax years 1985 through 1987 would be nondischargeable. The government asserts that the bankruptcy court's equitable power to toll this time period arises from the language of 11 U.S.C. § 105(a), which provides that the bankruptcy

---

7. In noting these conclusions, the Court does not find that any other conclusions reached by the bankruptcy court were in error. Rather, the

points of law addressed by this Court in this order merit special attention as being especially pertinent to the issues raised on appeal.

court may "issue any order process or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code." In making its argument, the government points to decisions from the other circuits where the appellate courts have exercised equitable powers to suspend the "look-back" provisions of section 507(a)(8) during the debtor's previous bankruptcy and finding the debtor's lingering tax liabilities non-dischargeable. *See In re Richards,* 994 F.2d 763, 766 (10th Cir.1993); *In re Montoya,* 965 F.2d 554 (7th Cir.1992); *United States v. West (In re West),* 137 B.R. 1012 (D.Or.1992), *aff'd,* 5 F.3d 423, 427 (9th Cir.1993), *cert. denied,* 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *In re Brickley,* 70 B.R. 113, 115 (9th Cir. BAP 1986). In its brief, the appellant specially points to language from the opinion in *Richards,* where the Court of Appeals for the Tenth Circuit ultimately affirmed a bankruptcy court's decision to toll the 240–day assessment period in section 507(a)(8)(A) during the time of the debtor's prior bankruptcy. 994 F.2d at 765. In the opinion, the appellate court found that suspension of the period was consistent with the underlying philosophy of the Bankruptcy Code. *Id.* Effectively, the Tenth Circuit looked behind the plain meaning of § 507(a)(8)(A), noting: "The Bankruptcy Court's order suspending the 240–day period while Richards was in his first bankruptcy fulfills and preserves Congress's intent to afford the government certain time periods to pursue collection efforts, and at the same time prevents the debtor from avoiding priority by prolonging the initial bankruptcy proceeding." *Id.* at 766.

■ This Court concludes that the bankruptcy court acted properly by refusing to toll the periods in question. In the first instance, the United States Court of Appeals for the Fifth Circuit has yet to adopt the reasoning of the circuits which have found equitable tolling of the § 507 time limitation justified. At the time pen was put to paper in the drafting of this opinion, no substantive decision had been rendered by the Fifth Circuit which confronts the issue of equitable tolling pursuant to 11 U.S.C. § 105(a). In the only Fifth Circuit decision to consider equitable tolling of the § 507 time limitation, the appellate court refused the government's

request to toll the time period pursuant to 11 U.S.C. § 108(c) since this section applied only to nonbankruptcy law and nonbankruptcy proceedings. *In re Quenzer,* 19 F.3d 163, 164 (5th Cir.1993). In this same case, the Fifth Circuit declined to consider a request to toll the § 507 time limitation pursuant to 105(a) because the matter had not been presented to the trial court, and was being raised for the first time on appeal. *Id.* Consequently, the Fifth Circuit has yet to substantively determine whether use of 11 U.S.C. § 105(a) to equitably toll the § 507 time limitation is proper.

It should also be noted that there are no sections of the Bankruptcy Code which expressly provide that in the case of successive petitions in bankruptcy, the § 507 time limitation will not run during the pendency of the first bankruptcy. Since the Bankruptcy Code did not address tolling, the Tenth Circuit was forced in *Richards* to investigate *Congressional intent* in supporting its decision that equitable tolling was needed to allow the government to collect its taxes from a serial filer of bankruptcies. 994 F.2d 763, 765. Thus, there is nothing in terms of Fifth Circuit or statutory authority which compelled the bankruptcy court to exercise its equitable powers in the instant case. This is evidenced by the government's argument that the Fifth Circuit's decision in *Quenzer* simply leaves open the option for a court to consider equitable tolling of the § 507 time limitation during a prior bankruptcy.

Further, the bankruptcy court did recognize that it likely maintained the power to equitably toll the § 507 time limitation, as supported by the noted opinions from other circuits. In its "Order Granting Motion for Enforcement of Injunction of Discharge of Debtor," the bankruptcy court noted: "The Court has followed the majority of courts that have held that *under the appropriate fact scenario* a court can use its equitable powers under § 105(a) to toll the three year limitation under § 507(a)(8)(A)(I)." (emphasis added). Thus, the bankruptcy court rendered a proper conclusion of law and acknowledged that equitably tolling the § 507 time limitation was within its powers, *if so warranted by the facts.* However, the bank-

ruptcy court also rendered specific fact findings which demonstrated that the facts of the instant case did not warrant the exercise of weighty equitable powers. In this regard, the bankruptcy court found that the IRS did not properly invoke the power of the bankruptcy court to provide such relief and that it did not even make an affirmative request that equitable powers be used to toll the noted time limitation. Ultimately, the bankruptcy court found that the IRS had acted in a manner contrary to equity by proceeding to collect the unpaid taxes without properly raising the issue of their dischargeability with the bankruptcy court. Deference should be accorded the bankruptcy court and this Court will not disturb the specific fact findings which have been made. In the opinion from *Quenzer*, the Fifth Circuit, adopting language from the Supreme Court, took a similar position in regard to the equitable tolling issue:

> Equitable considerations are largely fact-driven. 'The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case.' Full development and examination of the facts and the relative positions of the parties are imperative in the exercise of the court's equitable powers. Necessarily, '[i]n shaping equity decrees the trial court is vested with broad discretionary power; appellate review is correspondingly narrow.' Determining the equities in the first instance is seldom fit grist for the appellate mill.

*In re Quenzer*, 19 F.3d at 165 (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329–30, 64 S.Ct. 587, 591–92, 88 L.Ed. 754 (1944) and *Lemon v. Kurtzman*, 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973)). In *Quenzer*, the Fifth Circuit ultimately found that the exercise of equitable powers was not appropriate: "The record before us is devoid of any factual findings by the bankruptcy or district courts which would justify the exercise of equitable powers to extend the time for the government's tax collection efforts." *Id.* In the instant case, the bankruptcy court had the full record before it and was able to thoroughly consider the facts and positions of the parties. It made a fact-driven determination which this Court will not disturb on

appeal. The Court therefore finds that the bankruptcy court's refusal to exercise its equitable powers to toll the time limitations found in § 507(a)(8)(A) was proper. The taxes in question are dischargeable in accordance with the clear language of 11 U.S.C. § 507(a)(8)(a).

### B. Proper Request to Use Equitable Powers

In this second point of error, the government argues that the bankruptcy court erred in concluding that the IRS never properly requested the bankruptcy court to use its equitable powers pursuant to 11 U.S.C. § 105(a) to toll the three year time period in 11 U.S.C. § 507(a)(8)(A)(I) during the time the debtors were engaged in their prior Chapter 13 bankruptcy, plus a six-month period thereafter. In support of this assertion, the government first argues that in its Response to the Debtor's Motion for Enforcement, it affirmatively pled equitable tolling as a "First Defense." The government also notes that in this response, they stated that the Fifth Circuit's decision in *Quenzer v. United States*, 19 F.3d 163 (5th Cir.1993), does not bar, as a matter of law, a bankruptcy court's tolling of the measuring time period of 11 U.S.C. § 507(a)(8)(A). The government also reminds the Court that this response also cited *In re Robert and Joycele Lerras*, Case No. 94–40724–S–13 (Bankr.E.D. Tex. June 7, 1995), where Judge Sharp elected to exercise the equitable tolling powers of the bankruptcy court in favor of the government pursuant to 11 U.S.C. § 105(a). Next, the appellant points to its Trial Memorandum where the government states that it argued that the it was entitled to § 105(a) equitable tolling of the § 507 time limitation for the time the debtors were in their prior bankruptcy. The government also references the general request at the conclusion of this memorandum that the debtors' motion for enforcement be denied. These are instances, the government asserts, where the IRS made affirmative requests of the bankruptcy court to use its equitable powers to toll the § 507 time limitation during the time of the debtors' prior bankruptcy.

As noted, the bankruptcy court determined in its fact-findings that the appellant had never made an affirmative request invoking the equitable powers of the bankruptcy court to toll the § 507 time limitation. This determination by the bankruptcy court was not clearly erroneous. The equitable powers of a court are extraordinary in nature and are only considered when a remedy at law is not available. It seems clear, then, that when a party seeks for a court to exercise those equitable powers, it should make a specific and affirmative request which states, with particularity, the grounds therefor. Parties should be precise and exact in crafting their pleadings, especially when those pleadings seek nonlegal remedies. General prayers and recitations of authority do not properly invoke action by the court. Consequently, in its response to the debtor's motion, the government's argument that *Quenzer* does not preclude equitable tolling does not amount to an affirmative request that the bankruptcy court exercise its equitable powers. The conclusion of this same response simply prays that the debtor's motion be "dismissed with prejudice or denied, and for general relief." Again, no specific language seeking equitable action by the bankruptcy is included here. It is only a general prayer. The government's trial brief, while slightly more specific, still lacks an affirmative request. Here, the government makes the oft-repeated assertion that the *Quenzer* decision does not bar, as a matter of law, tolling of the § 507 time limitation. The appellant cites apparent authority for this assertion, but again concludes the trial brief with the unspecific statement: " ... the United States requests the Court to deny Debtors' Motion for Enforcement of Injunction of Discharge of Debtor." It is true that these pleadings put the reader on notice of the government's position and what relief it likely seeks. However, no affirmative request for the bankruptcy court to exercise its equitable powers is apparent. The bankruptcy court's finding to this effect are therefore not clearly erroneous.

## C. Responsibility in Filing an Adversary Proceeding

In this third point of error, the government asserts that the bankruptcy court erred in concluding that the IRS should have filed an adversary proceeding in the debtors' no-asset Chapter 7 bankruptcy proceeding to determine the dischargeability of income tax liability under the theory of equitable tolling. The government further contends that it was error for the bankruptcy court to find that the failure to file the said adversary proceeding equated to "arrogant conduct" or "unclean hands." In its Order granting the debtors' Motion to Enforce the Discharge Injunction ("Motion to Enforce"), the bankruptcy court explained that it was incumbent upon the IRS to factually show that 11 U.S.C. § 105(a) should be used to equitably toll the § 507 time limitation so that the taxes in question would be nondischargeable. The bankruptcy court noted that in attempting to collect the taxes in question, the IRS simply presumed that tolling of the § 507 time limitation was warranted without a proper ruling from the court. The bankruptcy court explained that if IRS believed that tolling was warranted, the IRS should have filed an adversary proceeding seeking an exception to discharge pursuant to 11 U.S.C. § 523(a)(1) under the theory of equitable tolling. In arriving at this, the court cited to Federal Rule of Bankruptcy Procedure 7001(6) & (7), which governs adversary proceedings. The bankruptcy court found that the actions of the IRS in this case amounted to "arrogant conduct," leaving it with "unclean hands." Consequently, the court found that it would not use its equitable powers to assist a party who had acted in a manner contrary to the principles of equity.

The government makes much of the fact that there were no assets or property to distribute in the debtors' Chapter 7 bankruptcy, making it a "no-asset" bankruptcy proceeding. The government argues, therefore, that they were not required to file a proof of claim. The Fifth Circuit has affirmed this proposition that proofs of claim need not be filed in a no-asset bankruptcy proceeding. *See In re Smith*, 21 F.3d 660, 664 (5th Cir.1994). It is clear, then, that in determining the question of equitable tolling, the filing of a proof of claim was not the proper procedure.

In determining which is the proper proceeding, it is important to consider the character of the powers granted to the bankruptcy court pursuant to section 105(a). Circuit court authority has established that by invoking 11 U.S.C. § 105(a), a party is requesting that the court exercise its *equitable powers.* The case of *In re American Hardwoods, Inc.,* 885 F.2d 621, 625 (9th Cir.1989), offers some language describing the function of 105(a): " . . . [S]ection 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate." (citing *In re Burstein–Applebee Co.,* 63 B.R. 1011, 1020 (Bankr. W.D.Mo.1986)). Also in this opinion, the Ninth Circuit noted: "While endowing the court with general equitable powers, section 105 does not authorize relief inconsistent with more specific law." *Id.* (citing *In re Golden Plan of California, Inc.,* 829 F.2d 705, 713 (9th Cir.1986)). In its holding in the case of *In re Richards,* 994 F.2d at 765, to which the government points, the Tenth Circuit recognized the equitable character of section 105: "The use of the equitable authority in 11 U.S.C. § 105(a) is not inconsistent with any specific provision of the Bankruptcy Code . . ." As mentioned previously, the Fifth Circuit in *Quenzer* also characterized use of section 105(a) as being within the equitable powers of the bankruptcy court. *See* 19 F.3d 163, 165 (5th Cir.1993).

■ Recognizing that section 105(a) operates within the bankruptcy court's equitable powers directly influences the determination of what proceeding must be used to invoke these powers. Bankruptcy Rule 7001(7) specifically provides that an adversary proceeding is the appropriate vehicle for obtaining an injunction *or any other equitable relief. See* Fed.R.Bankr.P. 7001(7) (emphasis added). A request for equitable relief pursuant to section 105(a) would logically require the filing of an adversary proceeding. Consequently, the bankruptcy court's conclusion that the filing of an adversary proceeding was the correct procedure to request equitable tolling of the § 507 time limitation was proper.

Having established that an adversary proceeding was the proper vehicle for considering the issue of equitable tolling, the question remains as to which party was responsible for the filing of an adversary proceeding. In order to properly determine this matter, the Court will look to the nature of adversary proceedings and the procedures for filing them. Adversary proceedings have been correctly described as "full blown federal lawsuits within the larger bankruptcy case," and are thereby distinguishable from other disputes in bankruptcy cases which are denominated "contested matters" and are generally subject to the less elaborate procedures specified in Bankruptcy Rule 9014. *In re Wood and Locker, Inc.,* 868 F.2d 139, 142 (5th Cir.1989). Regarding who is to file the proceeding, the Fifth Circuit has made clear that in initiating an adversary proceeding, *it is the party seeking equitable relief* who must file a complaint and serve each of the other affected parties. *Matter of Zale Corporation,* 62 F.3d 746, 763 (5th Cir.1995)(citing *Village Mobile Homes, Inc. v. First Gibraltar Bank (In re Village Mobile Homes, Inc.),* 947 F.2d 1282, 1283 (5th Cir.1991))(emphasis added). It is apparent that in the instant case, the IRS, in seeking to invoke the equitable powers of the bankruptcy court, was responsible for filing and serving a complaint to initiate an adversary proceeding.

The responsibility of initiating an adversary proceeding could not have fallen on the debtors in this case. The debtors were not seeking equitable relief and had no reason to do so. The language from 11 U.S.C. § 507(a)(8)(A) describing which taxes may be prioritized is clear and unambiguous. The IRS was given a specific time period during which to collect its taxes and that period is clearly-expressed. Based on the language from section 507, the debtors, in closing their Chapter 7 bankruptcy in 1993, were within their right to presume that the taxes from tax years 1985, 1986, and 1987 were dischargeable since these taxes had been due over three years before the Chapter 7 petition had been filed.. Consequently, the debtors had no reason to file an adversary proceeding; they did not need to formally invoke the power of the bankruptcy court ei-

ther to seek equitable relief or to investigate the dischargeability of taxes which were clearly discharged pursuant to section 507.

On the other hand, in seeking to toll the statute, the IRS required relief beyond what was allowed in the bankruptcy code. As noted, the Tenth Circuit recognized in *Richards*, 994 F.2d at 765, that there are no provisions of the bankruptcy code which expressly provide for suspension of the § 507 time limitation during the pendency of a prior bankruptcy. Because the taxes in question would be discharged based on what was in the statute, the IRS was forced to seek some type of equitable relief. Thus, in order to collect these taxes, it was the responsibility of the IRS to file the adversary proceeding to obtain this equitable relief. Therefore, the bankruptcy court properly concluded that the IRS was charged with the responsibility of filing the adversary proceeding to seek equitable tolling.

■ Having determined that it was the responsibility of the IRS to initiate an adversary proceeding to obtain equitable tolling of the § 507 time limitation, the bankruptcy court concluded that the efforts of the IRS to collect the taxes in question without having done so amounted to "arrogant conduct." It was this conduct on the part of the IRS which the bankruptcy court found to be contrary to the principles of equity, contributing to the court's refusal to apply equitable tolling. This Court concurs with the bankruptcy court's finding that the IRS acted in an inequitable fashion. The record contains numerous "notices of intent to levy" which were sent by the IRS to the debtors. The record also shows that upon receipt of each notice, the debtors' attorney, Charles Lauffer, responded with letters warning the IRS to cease its attempt to collect, indicating that the taxes sought by the IRS had been discharged in the context of the debtors' Chapter 7 bankruptcy. The IRS ignored these letters and persisted in its collection efforts until the debtors' were forced to seek assistance from the bankruptcy court. The IRS should have first obtained a ruling from the bankruptcy court as to whether the § 507 time limitation would be equitably tolled prior to undertaking collection of the taxes in

question. Since equitable relief would be required to toll the statute, the IRS should have first filed an adversary proceeding to determine the issue. Based on support from the record, the bankruptcy court's finding that the IRS had acted in an inequitable manner was not clearly erroneous.

**CONCLUSION**

Based on a clear reading of the statute, the taxes in question for tax years 1985, 1986 and 1987 would be discharged in the context of the appellees' 1992 Chapter 7 bankruptcy because the taxes were due and assessed prior to the three year and 240–day time limitations provided in 11 U.S.C. § 507(a)(8)(A). These taxes could only be excepted from discharge through the application of equitable tolling of the these time periods. Equitable tolling could be applied pursuant to 11 U.S.C. § 105(a), which allows a bankruptcy court to issue any order or process to effect the purposes of the Bankruptcy Code. Case law from other circuits has supported equitable tolling of the §·507 time limitation during the pendency of a prior bankruptcy when tax collection was barred by the automatic stay put in place by 11 U.S.C. § 362. In the instant case, the debtors did file a prior bankruptcy which lasted over three years, preventing collection of the taxes during this time.

However, the Fifth Circuit has yet to affirm application of equitable tolling of the § 507 time limitation pursuant to section 105(a). Accordingly, the bankruptcy court refused the request of the IRS that equitable tolling of the § 507 time limitation be applied in the instant case. The bankruptcy court correctly stated the law, acknowledging that it likely had the power, pursuant to section 105(a), to toll the § 507 time limitation since such had not been precluded by Fifth Circuit case law. However, the bankruptcy court made the fact finding that the IRS had never made an affirmative request of the court that equitable tolling be applied. Consequently, the bankruptcy court found that the granting of equitable relief would not have been proper under these circumstances. Rather than disturb this finding, this Court rules as did the Fifth Circuit in *Quenzer*, concluding that

578

equitable considerations are largely fact-driven and are primarily the province of the trial court; appellate review is correspondingly narrow. The bankruptcy court's finding in this regard was not clearly erroneous. The Court has affirmed all of the findings of fact reached by the bankruptcy court and finds that none of them are clearly erroneous.

The bankruptcy court also concluded that, as a matter of law, it was the responsibility of the IRS to file an adversary proceeding to determine if equitable tolling of the § 507 time limitation would be applied before attempting to collect the taxes in question. This conclusion was proper as the Fifth Circuit has ruled that it bears upon the party seeking the equitable relief, here the IRS, to file a complaint and serve the other parties in the context of an adversary proceeding. The conclusions of law reached by the bankruptcy court were correct. The Court also concurs with the bankruptcy court's finding that the IRS acted in an inequitable manner by attempting to collect the taxes in question without properly seeking a ruling from the bankruptcy court as to whether equitable tolling would apply. It is therefore

**ORDERED** that the bankruptcy court's Findings of Fact and Conclusions of Law are hereby **AFFIRMED**.