In the Matter of Clyde J. FONTES, SSN: 417–70–6194, Debtors.

Clyde J. Fontes, Plaintiffs,

v.

United States of America, Internal Revenue Department, Defendants.

Bankruptcy No. 98–81488–JAC–7.
Adversary No. 98–80138–JAC–7.

United States Bankruptcy Court, N.D. Alabama, Northern Division.

Dec. 17, 1998.

Cynthia Lewis Stier, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

On December 8, 1998, this case came before the Court for a trial on the complaint filed by the debtor, Dr. Clyde J. Fontes ("Dr. Fontes"), to determine the dischargeability of his federal income tax liability (Form 1040) to the United States, Internal Revenue Service ("IRS"). At the conclusion of the trial, the Court dictated certain findings of fact and conclusions of law into the record and determined that judgment was due to be entered in favor of the IRS under the doctrine of equitable tolling. This memorandum opinion shall constitute additional findings of fact and conclusions of law in support of the Court's oral decision.[1]

On summary judgment, the debtor argued that his tax liability was dischargeable under 11 U.S.C. § 523(a)(1)(A) because same was incurred and tax returns were filed more than three years before the filing date of debtor's current petition. The IRS raised two defenses: statutory tolling under § 108(c), and equitable tolling under § 105(a). On September 23, 1998, the Court entered a memorandum opinion and order on the debtor's motion for summary judgment pursuant to which the Court determined that statutory tolling was not appropriate in this case, but that the IRS could raise equitable tolling as a defense to prevent the loss that would otherwise be inescapable. Finding the determination of equitable tolling to be largely fact-driven, the Court concluded that the government's equitable arguments for non-dischargeability could not be resolved on motion for summary judgment and ordered a trial on that issue.

## BACKGROUND

Cynthia Slate–Cook, Decatur, AL, for plaintiff.

The essential facts are not in dispute.[2] Dr. Fontes is a fifty year-old chiropractor who

---

1. This memorandum opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

2. At trial, the parties stipulated as to the amount of unpaid tax liability for the tax years 1986 through 1990 as listed below for an aggregate tax

has filed five bankruptcy petitions since 1987. On April 15, 1998, the debtor filed the current chapter 7 case and received a discharge under § 727 on August 24, 1998 of all dischargeable debts other than those at issue. The current dispute involves the dischargeability of Dr. Fontes' 1986, 1987, 1988, 1989 and 1990 tax liabilities.

On November 17, 1987, the debtor and his former wife, Sandra Fontes, filed their first chapter 13 petition which was dismissed on November 14, 1990 on the trustee's motion to dismiss for failure to make payments. The petition was filed after the IRS seized the debtor's bank account and allegedly refused to work out a payment plan to satisfy the income tax obligation. The IRS filed a proof of claim in the first case in the amount of $49,409.82 for tax year 1986.[3] The IRS received distributions in the amount of $26,017 during the pendency of the case leaving a balance of $23,392 upon its dismissal.

During the pendency of their first case, Dr. and Mrs. Sandra Fontes filed joint federal income tax returns for the 1987, 1988, and 1989 tax years. Each return showed a balance due and owing, but no payments were made on same throughout the thirty-six month period of the first bankruptcy. On April 15, 1991, the debtor and Sandra Fontes filed their joint 1990 federal income tax return, which again showed a balance due and owing, but unpaid.

On May 17, 1991, Dr. and Mrs. Sandra Fontes filed their second joint petition for relief under chapter 13 of the Bankruptcy Code which was dismissed on August 1, 1994 on the trustee's motion to dismiss for failure to make plan payments. The debtor testified that his second petition was dismissed after he became depressed over the loss of a son who was killed in an accident.

The IRS filed a proof of claim in the second case for tax years 1986, 1987, 1988, 1989 and 1990 in the total amount of $102,463.49. During this case the sum of $41,320 was paid on the tax claim and a balance of $61,143 remained due and owing at the time of its dismissal.

During his second bankruptcy case, Dr. Fontes effectuated certain asset transfers without court permission. In the spring of 1993, he agreed to an uncontested divorce from Sandra Fontes in which she received Dr. Fontes' undivided one-half interest in the parties' home which had equity in the amount of $30,000. She also received a certificate of deposit from him worth approximately $11,000, which had been earned or acquired by Dr. Fontes during the pendency of the second case. Other than his personal clothes and a 1985 automobile, the debtor received nothing from the divorce, but he agreed to pay the parties' joint federal tax liabilities.[4] During this case in April of 1993, the debtor also incorporated his sole proprietorship forming Alabama Chiropractic, Inc. and transferred by bill of sale all his business assets to the corporation, including furniture, equipment, and accounts receivable. Said property had a book value of approximately $30,000, and a fair market value of approximately $40,000 to $50,000.[5] In return, Dr. Fontes was issued 100% of the stock in the

---

liability of $103,469.16 with penalties and interest.

    1986—$13,416.51
    1987—$27,436.94
    1988—$27,111.42
    1989—$31,620.06
    1990—$ 3,193.73

The parties also stipulated that the debtor's 1992 Form 941 employment tax liability in the amount of $3,076.26 is nondischargeable.

3.  On August 19, 1987, the debtor and his wife, Sandra, filed their joint 1986 federal income tax return, which showed a balance due and owing.

4.  Sandra Fontes filed a separate petition under chapter 7 in 1997 and received a discharge of all tax liabilities.

5.  Mr. Jim Rhodes, the debtor's accountant, testified that between 1993 and 1995, the debtor borrowed $59,000 from the corporation by taking draws against the $30,000 book value in assets transferred by the debtor to the corporation in 1993 and then by taking additional draws that totaled $29,000. In 1996, Mr. Rhodes advised the debtor to reduce the loan balance owed by debtor to the corporation and effectuated this loan reduction by reporting 1099 income in the amount of $24,000 on debtor's 1996 tax return although the debtor only took $10,000 in draws during 1996. This left a loan balance in 1997 of $15,000. The debtor did not receive Court permission to obtain a loan from the corporation.

corporation. Both the uncontested divorce and asset transfers occurred at a time when the debtor was substantially indebted to the IRS. Neither the transfer to the wife nor to the corporation were disclosed to or approved by the bankruptcy court.

On July 29, 1994, Dr. Fontes filed a third chapter 13 petition that was dismissed on March 5, 1996 on the trustee's motion to dismiss for failure to make plan payments. The debtor's third chapter 13 lasted for 21 months during which time the IRS received $5,260.92 toward payment of its priority claim in the amount of $71,387.04[6] for the tax years of 1986, 1987, 1988, 1989 and 1990.

On September 3, 1996, the debtor filed a chapter 7 petition that he voluntarily dismissed on November 18, 1996 upon advice of counsel that a recent case in the Northern District of Alabama held that the time periods in § 507(a)(8)(A) are statutory elements of § 523(a)(1) that are not automatically tolled by a prior bankruptcy case[7] and that if he waited to refile on April 15, 1998 that the three years would have run for all tax years in dispute.

It was during Dr. Fontes' third bankruptcy, that the debtor, on November of 1994, married his office manager, Charlotte Fontes. Charlotte Fontes began working for the debtor in October of 1990 as a front office chiropractic assistant earning $16,000 per year. At her prior place of employment, she worked as a part-time chiropractic assistant earning $6 per hour. In April of 1993, after the business was incorporated, the employees including Dr. Fontes received salaries from the corporation. In 1995, the new Mrs. Fontes was promoted to office manager and her salary was increased to approximately $25,000 per year. Mrs. Fontes received another raise in January of 1997 to $1,000 per week. During this same time period, Dr. Fontes' salary was only $375 per week in draws from the corporation plus the use of a leased 1997 F 150 Ford vehicle.[8] Mrs. Fontes was and now is by far the highest paid employee of the corporation. She earns approximately $25 per hour while the next highest paid employee, Dr. Fontes, earns approximately $9.37 per hour.[9]

Mrs. Fontes' office management responsibilities include insurance billing, accounts payable and coordinating the front desk. She also performs part-time duties as a physical therapist and x-ray technician. Dr. Fontes testified that a full-time physical therapist would cost the corporation $15 to $20 per hour and that a billing clerk would cost $8 to $10 per hour.

The Fontes' live in a townhouse purchased by Mrs. Fontes. Dr. Fontes does not contribute to the monthly mortgage payments of $658 per month. Mrs. Fontes testified that she also pays the utility bill and telephone bill while the debtor contributes to the food and laundry bills. Until October of 1998, Mrs. Fontes also paid the debtor's auto insurance on the leased vehicle provided to debtor by the corporation. The Court notes, however, that in Schedule J—Current Expenditures—of the debtor's current petition the debtor listed expenses for utilities, telephone and auto insurance. It appears that Dr. Fontes receives a meager income, but enjoys many of the finer amenities of life which are supplied by his wife, the highest paid employee of the chiropractic business. It further appears, however, that Dr. Fontes is the real engine that runs the chiropractic business.

The Court also notes that Dr. Fontes has paid certain obligations owed by his family despite having no legal obligation to make such payments while being substantially in-

---

6. The IRS also had an unsecured claim for $10,-499.24 in debtor's third bankruptcy upon which no distributions were made.

7. *In re Turner*, 195 B.R. 476 (Bankr.N.D.Ala. 1996).

8. During 1995 and 1996, Dr. Fontes earned gross income of $11,000 per year. In his deposition, the debtor testified that he also earned $11,000 to $12,000 in 1997, but at trial Dr. Fontes testified that he earned approximately $15,000 to $20,000 in 1997. The debtor now receives a salary from the corporation of approximately $1,800 per month, but no longer receives a vehicle from the corporation.

9. Other employees include a front desk assistant who earns $7.50 per hour, a file clerk who earns $5.50 per hour and a cleaning assistant who is paid $50 per week.

debted to the IRS. The debtor testified that in 1996 and 1997, he paid his son's student loan payments for a total of $6,600 although he was not legally obligated to make the payments. The debtor also testified that he is helping his wife pay a credit card obligation incurred by her in 1997 when she and Dr. Fontes took a $3,000 trip to Saint Thomas.

The parties stipulated on the record that throughout the periods that Dr. Fontes was not in bankruptcy, that the IRS wrote him letters and otherwise contacted him about the delinquent tax account.

## ANALYSIS

In this adversary proceeding, Dr. Fontes argues that his federal income taxes for 1986 through 1990 are dischargeable because the taxes are outside the three year look back period in 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(i). Section 507(a)(8)(A)(i) [10] grants the government eighth priority for unpaid income taxes if the tax liability dates less than three years from the date of filing of the bankruptcy petition, thus, limiting the priority status to more recent, but unpaid taxes. Section 523(a)(1)(A) [11] excepts from discharge those taxes specified in § 507(a)(8)(A) for the periods set out in that provision. Typically, taxes which were due less than three years prior to or assessed within 240 days of the filing of the debtor's bankruptcy petition would be excepted from discharge and collectable by the IRS.[12] If during either the three year look back period or 240 day assessment period, the debtor was protected by the automatic stay in another bankruptcy, the IRS would be prevented from collecting these taxes under 11 U.S.C. § 362.[13]

This is exactly the situation from which the IRS argues that it is entitled to equitable relief due to the debtor's four previous bankruptcy filings that prevented the IRS's collection efforts. The IRS argues that the taxes plaintiff alleges to be dischargeable are excepted from discharge pursuant to the equitable tolling provisions under § 105. Section 105(a) of the Bankruptcy Code provides that:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Although there is a split of authority regarding statutory tolling under § 108(c), it is well recognized that § 105(a) endows bankruptcy courts with broad equitable powers that may be exercised to toll or enlarge the three year look back period, if so warranted by the facts. The three year look back period in § 507(a)(8)(A)(i) is a substantive element of the government's cause of action under § 523(a)(1)(A).[14] This element of the government's cause of action can be supplied by a court applying equitable principles only upon proof of debtor misconduct or abuse.[15] The debtor must abuse the bank-

---

10. 11 U.S.C. § 507(a)(8)(A)(i) provides:
(a) The following expenses and claims have priority in the following order:
(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.

11. 11 U.S.C. § 523(a)(1)(A) provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—
(A) of the king and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was field or allowed[.]

12. *See United States v. Gilmore*, 226 B.R. 567, 572 (E.D.Tex.1998).

13. *Id.*

14. *In re Nolan*, 205 B.R. at 887.

15. *Id.* (noting that the "courts that have allowed 'equitable tolling' without proof of debtor misconduct have mistaken the three year look back for a statute of limitations").

ruptcy process "sufficient to inspire a bankruptcy court to use § 105 to presume or supply the three year element in § 507(a)(8)(A)(i)." [16] Dr. Fontes argues that each chapter 13 proceeding was dismissed due to circumstances beyond his control, but upon careful review of the evidence, the Court finds that the facts of the instant case warrant the exercise of the Court's equitable powers to toll or enlarge the three year element found in § 507(a)(8)(A)(i).

Dr. Fontes conveyed substantial equity in his former marital residence and a certificate of deposit worth $11,000 to Sandra Fontes without court permission during the pendency of his second chapter 13 case. Although it is possible that the transfer to the wife may have been justified, it was done without court approval with notice to all creditors. The debtor also transferred substantial assets valued at approximately $40,-000 to $50,000 to Alabama Chiropractors, Inc. with his initial capitalization of the corporation and thereby placed those assets behind the corporation's creditors. Each of the transfers were effectuated while in bankruptcy and while Dr. Fontes had a substantial federal income tax liability. The transfers were made while Dr. Fontes enjoyed the shield of the automatic stay. Property was taken out of the reach of his creditors and without disclosure to the court or court permission.

The financial management of the debtor's corporation is also questionable. The debtor appears to have structured an arrangement where the corporate profits are funneled to his wife, Charlotte Fontes, while he, Dr. Fontes enjoys the benefits of same. His shelter, utilities, and other amenities are taken care of by his wife with funds that are primarily the fruit of his labor. This arrangement is a sham that also constitutes an abuse that warrants use of the Court's equitable tolling powers under § 105(a).

The Court notes the case of *Baker v. Rank (In re Baker)*, 154 F.3d 534 (5th Cir.1998), which although not exactly in point is instructive on the issue at hand. There the Fifth Circuit affirmed the bankruptcy court's denial of a chapter 7 debtors' discharge where the debtors failed to account for and used without court approval funds received by them during the pendency of their chapter 13 prior to the conversion of the case to chapter 7. During the pendency of the chapter 13, the debtors received a windfall contingency fee of $11,700. Instead of reporting same to the trustee, the debtors used it to finance a trip to the Far East. Upon return, the debtors converted the chapter 13 to a chapter 7. Because debtors' conduct occurred after the date they filed for chapter 13, and because the bankruptcy court expressly found that this conduct hindered their creditors, the Fifth Circuit affirmed that such conduct was sufficient to justify a denial of discharge under § 727 of Title 11, United States Code.

A separate order will be entered consistent with this opinion.

## JUDGMENT

In conformity with and pursuant to the memorandum opinion of the Court contemporaneously entered herewith and for reasons set forth therein,

It is ORDERED, ADJUDGED AND DECREED that:

1. Judgment be entered in favor of the defendant, United States, Internal Revenue Department, and against the plaintiff, Clyde J. Fontes.

2. The debtor's tax liabilities for tax years 1986, 1987, 1988, 1989, 1990 and 1992 are nondischargeable and not within the exception set forth in 11 U.S.C. § 523(a)(1)(A).

16. *Id.*